# IN THE COURT OF APPEALS OF TENNESSEE

## WESTERN SECTION AT NASHVILLE

FILED

**August 16, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

---

CONE OIL CO., INC.,                    )        Williamson Chancery No.  23282
                                       )
      Plaintiff/Appellant            )        Appeal No.  01A01-9604-CH-00154
                                       )
v.                                     )
                                       )
WILLIAMSON COUNTY REGIONAL             )
PLANNING COMMISSION,                   )
                                       )
      Defendant/Appellee             )


APPEAL FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE
THE HONORABLE HENRY DENMARK BELL, CHANCELLOR


**THOMAS V. WHITE**
**TUNE, ENTREKIN & WHITE, P.C.**
21st Floor
315 Deaderick Street
Nashville, Tennessee 37219
Attorney for Appellant

**JAMES D. PETERSEN**
**PETERSEN, BUERGER, MOSELEY & CARSON**
306 Court Square
Franklin, Tennessee 37064
Attorney for Appellee


**AFFIRMED.**

                              **WILLIAM H. INMAN, SENIOR JUDGE**


**CONCUR:**

**W. FRANK CRAWFORD, JUDGE**

**ALAN E. HIGHERS, JUDGE**

# O P I N I O N

The Williamson County Regional Planning Commission ["WCRPC"] initially heard the application of Cone Oil, Inc. ["Cone"] on January 12, 1995 for a conditional use permit to expand an existing refueling station at the Goose Creek exit, Interstate 65. The station was previously owned and operated by Stuckey's; Cone intended to add a new fueling facility.

Cone's application triggered administrative reviews. It contracted the professional services of Hawkins Development Company to evaluate the impact of the proposed new facility; the WCRPC also contracted the professional services of an expert, Tocknell & Assoc., to evaluate the traffic impact of the proposed facility.

The WCRPC initially heard the application on January 12, 1995, as we have stated. The staff recommended approval; various residents opposed the application, the thrust of their objections being directed essentially to traffic congestion and general safety conditions. An engineer for Cone explained that the site would be self-limiting, with no more than 50 trucks using it in a 24-hour period.

The WCRPC declined to accept its staff's recommendation, citing as reasons the proximity of Interstate 65, the lack of information about the impact of traffic on the area and the possibility of increased traffic problems. Specifically, it raised nine issues involving traffic safety which prevented approval. These issues were:

(1) The thickness of the pavement on Old Peytonsville Road as to whether it was adequate for heavy trucks.

(2) Whether a vertical curb would pose a problem for vehicles using the Goose Creek By-pass.

(3) What is the anticipated peak traffic on the By-pass and on site?

(4) The estimated number of trucks per day?

(5) Is stacking (trucks in line) likely to be a problem?

(6) What are the turning radii at ingress and egress of the site?

(7) Are the ramps to the site too steep?

(8) Is there a site-distance problem?

(9) Is there an adequate on-site maneuvering area for anticipated traffic?

The second public meeting, and the one with which we are concerned, was held on March 9, 1995. In the interim, Cone contracted with RPM and Assoc., a traffic consultant, to evaluate the proposed location.

RPM's findings were that the traffic impact would not create a safety problem and would be manageable. The expert employed by Williamson County concurred in this assessment of RPM and, again, the staff of WCRPC recommended approval of the application and made specific recommendations respecting each of the nine conditions laid down at the January 1995 meeting, which Cone proposed to satisfy.

All of the experts for Cone and the County recommended approval, as did the staff, as we have shown. Local residents were again allowed to air their views, the first of whom was a county commissioner and former truck driver who feared that too many trucks would be backed up at the station. Another resident expressed the view that trucks would not be able to stop on account of road surface conditions; still another (ten, in all) expressed fears of congestion, stacking, turning radii. The thrust of all objectors was directed to perceived traffic woes.

Following public comment, the WCRPC asked for a clarification of standards required to approve a conditional use permit. Specifically, Joe Horne, Planning Director for Williamson County, was asked if the site could be safely operated. He deferred to the opinions of the experts who had studied the issue; thereupon the WCRPC inquired where they stood if they rejected the application, and their counsel, Mr. Peterson, advised them that the application could not be rejected simply because the neighboring residents opposed it, explaining that the Ordinance itself must provide the reason to deny the application.

The WCRPC then voted to deny the conditional use permit for the asserted reason the site could not be safely operated as a refueling center.

On certiorari to the Chancery Court, the Chancellor ruled that the Zoning Ordinance delegates to the WCRPC discretion in reviewing applications for conditional use permits, and that material evidence supported the denial of the permit.

Cone appeals and presents two issues for review: (1) Whether the WCRPC exceeded its authority as a quasi-judicial body when it denied approval of Cone Oil's conditional use permit, and (2) Whether it acted arbitrarily.

Much of the briefs and arguments are given over to distinguishing the function and authority of a Regional Planning Commission as contrasted to a Board of Zoning Appeals. The essential thrust of the appellee's argument is that it is a quasi-judicial body and is vested with wide discretion, unlike Boards of Zoning Appeals. We see no need to explicate this point; the real issue is - - measured against the appropriate standard of review - - whether the WCRPC acted arbitrarily or in excess of its authority, and whether there is material evidence to support its denial of Cone's application.

The zoning ordinance, as pertinent here, provides:

"SECTION 9310. GENERAL STANDARDS FOR CONDITIONAL USES

No application for a conditional use permit shall be approved unless the Planning Commission shall specifically find the proposed conditional use appropriate in the location for which it is proposed. This finding shall be based on the following criteria:

A.   The proposed use shall be in harmony with the general purpose, goals, objectives, and standards of the Williamson County Comprehensive Plan, this Ordinance, and any other plan, program, or ordinance adopted, or under consideration pursuant to official notice by the County.

B.   The proposed location of the proposed use shall be consistent with policies, map, or provisions of the Comprehensive Plan, this Ordinance, or other plans or programs of the County.

C.   The proposed use at the proposed location shall not result in a substantial or undue adverse effect on adjacent property, the character of the neighborhood, traffic conditions, parking, public improvements, public sites or rights-of-way, or other matters affecting the public health, safety, and general welfare, . . ."

Clearly mandated by the ordinance is the requirement that the Planning Commission find, as a condition precedent to approval of a conditional use permit, that the proposed use will not unduly, adversely affect traffic conditions or the public safety.

The Planning Commission denied the permit for the reason the "site could not be safely operated as a semi (truck) refueling center." If there is material evidence to

4

support the decision of the Planning Commission, it was the duty of the Chancellor to uphold it, and our concomitant duty to uphold the Chancellor. "Material evidence" in this context has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Sexton v. Anderson County,* 587 S.W.2d 663, 666 (Tenn. App. 1979). Allied with this principle is the caveat that beliefs, opinions, and fears of neighborhood residents are not material evidence. *Mullins v. City of Knoxville,* 665 S.W.2d 393 (Tenn. App. 1983); *Sexton* at 666.

As we have shown, the Planning Commission conducted two public hearings. Because of the opposition presented by residents upon the first hearing - - or perhaps for other reasons not clearly articulated in the record - - the initial action of the Commission in disapproving the site plan without a traffic study and other data involved some indicia that if Cone satisfied the nine criteria, its application would be approved. This is a troublesome point, since Cone accepted the invitation essentially tendered and apparently expended much time, labor and money in complying, or attempting to comply, with the conditions. But a careful review of the minutes does not reveal anything more than an indication that approval might be forthcoming if the criteria were satisfied. Traffic and safety data concerned the Commission, which resolved these issues at the second hearing.

The experts employed by the Commission and by Cone testified that the proposed location posed no traffic problems and would create no safety factors. Cone argues that the material evidence - - all of it - - is therefore posited in its favor, because the opinions of local citizenry cannot intrude upon the fact-finding process. It is true that most of the ten residents who spoke in opposition to the granting of the permit merely expressed their opinions, but we know of no reason why the views of concerned residents whose experiences are relevant, i.e., the former truck driver, cannot be considered concomitantly with those of experts. Finally, and probably most importantly, a court cannot substitute its judgment for that of an administrative body. *Pace v. Garbage Disp. District,* 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965).

5

The appellee argues that it weighed all of the evidence and applied the Ordinance as required by law.  We cannot find that there is no material evidence to support the Commission's finding or that it acted illegally or in excess of its jurisdiction.

The judgment is affirmed at the costs of the appellant.


_____
William H. Inman, Senior Judge

CONCUR:


_____
W. Frank Crawford, Judge


_____
Alan E. Highers, Judge

6