IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 24, 2001 Session

## FRANKLIN R. MILLER, ET AL v. STATE OF TENNESSEE DEPARTMENT OF HUMAN SERVICES

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 98-0124-3     The Honorable D. J. Alissandratos, Chancellor**

———————————

**No. W2000-01088-COA-R3-CV - Filed March 5, 2001**

———————————

This case involves a denial of Medicaid benefits. The State of Tennessee Department of Human Services denied petitioner's application for Medicaid on a resource assessment which showed that petitioner had financial resources in excess of the $2,000.00 limit. The trial court found that the administrative agency incorrectly included petitioner's life insurance policy in the resource assessment and reversed the agency's order denying eligibility. The trial court remanded the case to the administrative tribunal to allow the petitioner to present further evidence regarding the percentage of ownership interest the petitioner had in the remaining assets. The Department of Human Services appeals. We affirm in part and reverse in part.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Affirmed in Part**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Paul G. Summers, Attorney General and Reporter, and Pamela A. Hayden-Wood, Assistant Attorney General, For Appellant, Tennessee Department of Human Services

Patricia L. Penn, Memphis, For Appellee, Nona J. Miller

### OPINION

On February 20, 1997, Franklin R. Miller was admitted to St. Francis Nursing Home in Memphis, Tennessee[1]. A little over a month later, Mr. Miller's wife, Nona Miller ("Appellee"), submitted an application for Medicaid on her husband's behalf. A Department of Human Services ("DHS") case worker subsequently determined that the Millers had resources in excess of the

—————————
[1]Mr. Miller died in March of 1999.

$2,000.00 Medicaid resource limit.[2]  DHS issued a denial of Mr. Miller's Medicaid application on May 19, 1997.

The Millers appealed DHS's denial of Medicaid benefits and were granted an administrative hearing appealing the denial.  The hearing, held on September 25, 1997, included testimony by Mrs. Miller and her daughter regarding ownership interests in the property which was the subject of the Medicaid resource assessment.  On October 17, 1997, the hearing officer entered an order denying Mr. Miller Medicaid benefits based on excess resources.  The hearing officer denied the Millers' petition for reconsideration of the Order, and DHS issued an order adopting the decision of the hearing officer.  The Millers' appeal to DHS was denied and on December 12, 1997, DHS issued a Final Order denying Medicaid benefits to Mr. Miller.

On February 8, 1998, the Millers filed a petition for review of the Final Order in Shelby County Chancery Court.  On April 10, 2000, the trial court entered "Order on Reconsideration of Final Order of Department of Human Services" which states:

> THIS MATTER came on for hearing upon the PETITION FOR RECONSIDERATION OF FINAL ORDER OF DEPARTMENT OF HUMAN SERVICES filed on behalf of Petitioner, Nona J. Miller, seeking appellate review of the final decision of the Administrative Law Judge in this matter, which final decision was affirmed by the Director of Appeals, State of Tennessee, Department of Human Services, Administrative Review Unit; upon the statements of counsel for Petitioner and Respondent; upon review of the Briefs of the respective parties; and, upon review of the entire record in this cause, from all of which the Court finds as follows:
>
> 1.  A review of the record in this cause reveals the Administrative Law Judge was clearly in error in applying the federal definition as recited at 20 CFR § 416.1230 (and in the compliant state policy cited by the hearing officer at page 66 of the administrative record) to the life insurance policies at issue herein.  Since the total net cash surrender value of the life insurance policies owned by the individual is a countable resource if the total face value of these policies is greater than $1,500.00 and neither of the life insurance policies owned by this applicant at the time of the assessment of his resources had a face value of greater than $1,500.00, none of the life insurance owned by this applicant may properly be included within the resource assessment as a matter of law.

---

[2]The DHS case worker found that the Millers had joint resources amounting to $48,888.89.  The case worker, following Medicaid guidelines, then allocated one-half of those resources, or $24,444.44, to Mr. Miller.

2. In light of the fact that this Court will defer to the trier of fact on the question of credibility of witnesses at the original hearing in this cause, this matter is remanded so that the original Petitioner may present additional evidence, if any, on the question of percentage ownership of remaining assets in the applicant whose resource assessment is at issue herein.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1. Neither of the life insurance policies owned by this applicant at the time of the assessment of his resources had a face value greater than $1,500.00, and all of the life insurance owned by this applicant is properly excluded, as a matter of law, from the assessment of his resources at the time of the subject application for Medicaid assistance in the payment of his long-term medical care expenses.

2. In light of the fact that this Court will defer to the trier of fact on the question of credibility of witnesses at the original hearing in this cause, this matter is remanded so that the original Petitioner may present additional evidence, if any, on the question of percentage ownership in the applicant whose resource assessment is at issue herein.

DHS appeals and presents the following issues for review: (1) Whether the hearing officer erred in determining that Mr. Miller's four life insurance policies were a countable resource for the purpose of determining his Medicaid eligibility; and (2) Whether the trial court exceeded its authority in remanding the case to the hearing officer to allow Mrs. Miller to present additional evidence regarding percentage ownership of the remaining assets included in the resource assessment. For the reasons below, we affirm the trial court's ruling regarding the life insurance policies, but hold that the trial court erred in remanding the case in order to allow Appellee to present additional evidence.

The Chancellor's review of DHS's Final Order is governed by T.C.A. § 4-5-322(h) (1998), which sets forth the standard of review on appeal of administrative proceedings:

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;

-3-

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

This Court's scope of review is the same as in the trial court: to review the findings of fact of the administrative agency upon the standard of substantial and material evidence. *See DePriest v. Puett*, 669 S.W.2d 669 (Tenn. Ct. App.1984). Although T.C.A. 4-5-322 does not clearly define "substantial and material" evidence, courts generally interpret the requirement as requiring "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn.Ct.App. 1988)(citations omitted).

While this Court may consider evidence in the record that detracts from its weight, the Court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. *See* T.C.A. § 4-5-322(h); *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (1965). The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *See Pace*, 390 S.W.2d at 463. It is within this narrow framework that we review the trial court's order.

Appellants first argue that the trial court incorrectly found that the hearing officer should have excluded Mr. Miller's life insurance policies from the resource assessment. As noted above, the Chancellor found that Mr. Miller's four policies should not be counted as resources for purposes of determining Medicaid eligibility because none of the policies "had a face value greater than $1,500.00." We agree with the Chancellor's conclusion that, as a matter of law, Mr. Miller's life insurance policies should not have been included as resources, although we arrive at this holding by a different means.

In order to determine if the policies at issue were "countable resources" for the purpose of Medicaid eligibility, it is first necessary to briefly review the Medicaid eligibility requirements under Tennessee law. "Medicaid, enacted in 1965 as Title XIX of the Social Security Act. . . .is designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services." *Atkins v. Rivera*, 477 U.S. 154, 157 (1986). T.C.A. § 71-5-106 provides, in relevant part:

. . . Eligibility for assistance shall be determined in a manner which will ensure that medical assistance is provided, within the limits of available resources subject to federal financial participation, to all persons who, although ineligible for supplementary security income or aid to families with dependent children, are medically needy.

T.C.A. § 71-5-106(a)(1) (2000 Supp.). The term "medically needy" is defined as:

. . . a class or classes of persons whose present income and financial assets are not sufficient to meet their present liabilities for health costs; provided, that the department of health or the department of human services, as may be designated by the governor, may through regulation establish an income limitation as well as other criteria, such as cash, savings, intangible assets and real and personal property for the determination of "medically needy."

T.C.A. § 71-5-103(5) (2000 Supp.).

Under Tennessee law, DHS determines which assets are used in evaluating the resources of an individual who is applying for Medicaid by reference to Title XIX of the Social Security Act. *See* T.C.A. § 71-5-106(b) (2000 Supp.). The Social Security Administration regulations which clarify the Social Security Act specifically exempt certain life insurance policies from inclusion as "resources." *See* 20 C.F.R. § 416.1230 (West 2001). Specifically, 20 C.F.R. § 416.1230(a) provides:

(a) General. In determining the resources of an individual (and spouse, if any), life insurance owned by the individual (and spouse, if any) will be considered to the extent of its cash surrender value. If, however, the total face value of all life insurance policies on any person does not exceed $1,500, no part of the cash surrender value of such life insurance will be taken into account in determining the resources of the individual (and spouse, if any). In determining the face value of life insurance on the individual (and spouse, if any), term insurance and burial insurance will not be taken into account.

Before examining the policies in question, we note that the record in this case is, at best, sparse. The copies of the policies which are part of the record consist of little more than the face page of each policy. Since we are confined to the record in making our determination regarding DHS's denial of benefits in this case, we must evaluate the policies based on the information available to us as part of that record.

Mr. Miller owned four life insurance policies: (1) New York Life (issued June 3, 1953); (2) Prudential (issued February 27, 1962); (3) National Trust Life (issued July 1, 1965); and (4) Southern

Farm Bureau (issued March 20, 1954). The hearing officer determined these policies to have a face value of $2500, $5,000, $6,000, and $5,000, respectively.[3] Because none of the policies contained cash surrender value tables, the DHS hearing officer valued all four of the policies at 60% of their face value.[4] The hearing officer then subtracted half of the adjusted face value of the policies as Mrs. Miller's "community spouse" share to determine how much of the policies should be included as Mr. Miller's countable resources.

We believe that the hearing officer erred in her assessment of Mr. Miller's policies. In order to count a life insurance policy for the purpose of assessing Medicaid eligibility, that policy must be capable of conversion to cash. *See* 20 C.F.R. § 416.1201(a).[5] In fact, 20 C.F.R. § 416.1230 specifically exempts term insurance[6] from countable resources. *See* 20 C.F.R. § 416.1230(a) (West 2001). All four policies in question include language indicating that they are payable only upon the death of the insured, none of the policies indicate that they have any cash surrender value, and two of the policies specifically provide for a decreased "ultimate" benefit. We find no evidence in the record, not even a scintilla of evidence, to support the DHS hearing officer's inclusion of the life insurance policies in Mr. Miller's Medicaid resource assessment.

Although the chancellor ruled correctly in excluding the insurance policies as resources, we believe he did so based on an erroneous reason. When a trial court rules correctly but upon an erroneous reason the appellate court will sustain the ruling upon what it conceives to be the correct theory. *See Duck v. Howell*, 729 S.W.2d 110, 113 (Tenn. Ct. App. 1986). Based on the evidence available to us, we hold that these policies were either term, or decreasing term, life insurance policies which had no cash value and should not have been included as countable resources for the purpose of determining Mr. Miller's eligibility for Medicaid benefits.[7]

The second issue in this case is whether the trial court exceeded its authority in remanding this case to DHS to allow Appellee to present more evidence regarding ownership interests in the

---

[3]These amounts represent the initial face amount of the policies. The National Trust Life and Southern Farm Bureau policies had "ultimate" face values of $1200 and $1500, respectively.

[4]The hearing officer, in her Initial Order, stated that the 60% valuation was based on a formula found in the "Medical Assistance Manual, Volume I, Chapter 15, Section V-F-4" which applies to policies in effect for 20 years or more. We note that the Medical Assistance Manual was not made a part of the record in this case.

[5]20 C.F.R. § 416.1201(a) (West 2001) defines "resources" as: "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance."

[6]"Term insurance" is defined as "a form of life insurance having no cash surrender value." 20 C.F.R. § 416.1230(b)(5) (West 2001).

[7]The exclusion of insurance obviously does not affect the finding of the administrative tribunal that Mr. Miler's resources exceed that allowable.

Millers' assets. Based upon our review of the Tennessee Uniform Administrative Procedures Act, T.C.A. § 4-5-101, *et seq.*, we hold that the trial court did exceed its authority in this regard.

The rule regarding "new evidence" in the administrative context is similar to the rule set out in *Crain v. Brown*, 823 S.W.2d 187, 192 (Tenn. Ct. App. 1991) which requires that a court find the proposed evidence is not only material, but that the evidence "could not have been discovered earlier with due diligence." T.C.A. § 4-5-322, which governs our review of the trial court's Order in this matter, provides, in relevant part:

> (e) If, before the date set for hearing, application is made to the court for leave to present additional evidence, *and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency*, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings or decisions with the reviewing court.

T.C.A. § 4-5-322 (1998)(emphasis added).

While we do not take issue with the Appellee's contention that evidence regarding ownership interests in Mr. Miller's resources is material to the outcome of this case, we find no merit to Appellee's claim that there were "good reasons" for failure to present the evidence at the agency hearing. Any evidence regarding ownership of the assets in question would, necessarily, have existed prior to the hearing, and the need to present such proof for purposes of challenging the resource assessment was obvious. For these reasons, we reverse the Order of the trial court remanding this case for the consideration of new evidence.

Appellee argues in her brief that the trial court's remand was proper in order to allow Appellee to present a statement from St. Francis Nursing Home as evidence that Mr. Miller "spent down" his resource by paying for his medical care. While evidence of "spend down" is relevant to a Medicaid resource assessment, we find nothing in the record that indicates that Appellee properly applied to the trial court for leave to present such evidence. Neither is there anything in the trial court's Order which indicates that the purpose of the remand to DHS had anything to do with evidence regarding medical expenses. The Order is very specific in remanding "so that the original Petitioner may present additional evidence, if any, *on the question of percentage ownership of remaining assets*. . ."(emphasis added).

For the foregoing reasons, we reverse the trial court's order remanding the case to the administrative tribunal to present further evidence. The order finding that the life insurance policies

should have been excluded from the resource assessment is affirmed.  Costs of appeal are assessed to appellee, Nona J. Miller.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.