# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 7, 2003 Session

# KENNEDY WOODS v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

### Appeal from the Chancery Court for Davidson County
### No. 01-91-I     Irvin H. Kilcrease, Jr., Chancellor

---

### No. M2001-03143-COA-R3-CV - Filed December 10, 2003

---

This case involves an Administrative Procedures Act appeal from the chancery court's determination of Appellant's Petition for Judicial Review. The petition sought review of the Civil Service Commission's final order affirming Appellant's termination for violation of the Metro Nashville Fire Department's Zero-Tolerance Policy on Substance Abuse. We affirm the order of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Kennedy Woods, Nashville, Tennessee, Pro Se.

Daniel W. Champney, John L. Kennedy, and Ann O'Connell, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

### OPINION

In 1997, pursuant to the authority granted in the Metro Charter, the Commission implemented a substance abuse policy. This policy provided disciplinary measures and drug testing methods for personnel of the Government of Metro Nashville and Davidson County. In 1998, the Metropolitan Fire Department adopted a "zero-tolerance policy" which provided the following specific information concerning illegal controlled substances:

I.      All members are prohibited from the possession and/or use of illegal controlled substances whether on or off duty. THERE SHALL BE NO ALLOWANCE FOR THE USE OF ILLEGAL DRUGS.

II.     Members are prohibited from using alcohol or any legal drug in a manner that might interfere with the proper performance of duties.

III.     Members are prohibited from using legal medication in an illegal manner.
IV.     All members must notify the Director Chief of any alcohol related conviction or any drug statute conviction occurring in the workplace within five (5) work days after the conviction (re: Drug - Free Workplace Act of 1988).

Pursuant to these two administrative policies, Aegis Laboratories conducted random drug screening of a group of employees including the appellant, Kennedy Woods. Mr. Woods' test returned a positive result. For this reason the fire department, after conducting a disciplinary hearing, terminated Mr. Woods. Mr. Woods then appealed the termination to the Civil Service Commission, which affirmed that disciplinary action. Mr. Woods then petitioned the chancery court seeking judicial review of the Commission's action. The chancellor affirmed the termination and dismissed the petition, entering the following findings of fact:

> This Court adopts the Findings of Fact of the Administrative Law Judge in the August 16, 2000 order which are summarized as follows:
> 1.     The Petitioner was employed with the Nashville Fire Department as a Firefighter until his discharge on February 1, 1999. (Vol. I, p. 242)
> 2.     The Civil Service Commission approved Policy 6.1-11 on August 1, 1997. (Vol. I, p. 242)
> 3.     On September 10, 1997, Petitioner received training and signed an Acknowledgment of Receipt and Understanding of the Metropolitan Government Substance Abuse policy (6.1-11). (Vol. I, p. 242)
> 4.     The Nashville Fire Department adopted Policy 6.1-11 on November 1, 1997. (Vol. I, p. 242)
> 5.     On July 1, 1998, Petitioner signed a statement that he received a copy of the Department Substance abuse Procedures and guidelines. (Vol. I, p. 242)
> 6.     On January 21, 1999, Petitioner participate[d] in a random drug test, pursuant to the Department Substance Abuse Procedures and Guidelines and the Metropolitan Government Substance abuse policy (6.1-11). (Vol. I, p. 242)
> 7.     On January 26, 1999 the Department was notified by its contract independent laboratory that Petitioner had tested positive for an illegal controlled substance. (Vol. I, p. 242)
> 8.     On January 28, 1999, Petitioner was notified that charges were filed against him for violation of Policy 6.1-11. (Vol. I, p. 243)
> 9.     A hearing on the charges was set for February 1, 1999. (Vol. I, p. 243).
> 10.     On February 1, 1999, the Department notified Petitioner that he was terminated for violation of Policy 6.1-11. (Vol. I, p. 243)
> 11.     On February 11, 1999, Petitioner appealed. (Vol. I, p. 243)

From this order Mr. Woods appeals, arguing as error the refusal of the chancery court to find that the Department and Civil Service Commission acted arbitrarily and capriciously in adopting the

zero-tolerance policy and that his termination was unsupported by material and substantial evidence and otherwise arbitrary. *See* Tenn.Code Ann. § 4-5-322.

I.      STANDARD OF REVIEW

The chancery court and this Court must conform to the same standard of review, that set out in section 4-5-322(h) of the Tennessee Code: (*C.F. Industries v. Tenn. Pub. Serv. Comm.*, 599 S.W.2d 536, 540 (Tenn.1980)).

> (h)     The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1)     In violation of constitutional or statutory provisions;
>
> (2)     In excess of the statutory authority of the agency;
>
> (3)     Made upon unlawful procedure;
>
> (4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)     Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h)(2001). *See also Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Control Board*, 907 S.W.2d 807, 809 (Tenn.1995).

While we may consider evidence that detracts from the weight of other evidence in the record, this Court may not substitute its judgment for that of the agency concerning that weight. *See Gluck v. Civil Service Commission*, 15 S.W.3d 486, 490 (Tenn.Ct.App.2000); *see also Pace v. Garbage Disposal Dist.*, 54 Tenn.App. 263, 266, 390 S.W.2d 461, 463 (1965). Although the phrase is not clearly defined in the statute, substantial and material evidence is understood to require something less than a preponderance of the evidence and more than a scintilla or glimmer. *See Gluck*, 15 S.W.3d at 490 (quoting *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (1988). Furthermore, in situations where the administrative agency and trial court enter concurrent findings of fact, those findings are conclusive upon this Court. *See C.F.*

*Industries v. Tennessee Public Service Comm'n*, 599 S.W.2d 536, 540 (Tenn.1980). Nonetheless an agency's decision supported with substantial and material evidence, may still be arbitrary and capricious if caused by a "clear error in judgment." *See Jackson Mobilphone Co., Inc. v. Tennessee Public Service Comm'n*, 876 S.W.2d 106, 110 (Tenn.Ct.App.1993).

Mr. Woods' challenge to his termination rests primarily upon the administrative agency's consideration of his random drug test, and secondarily upon his claims regarding the arbitrary and capricious nature of the fire department's implementation of a "zero-tolerance policy" in light of the existing substance abuse policy adopted by the Civil Service Commission.

## II.   CHAIN OF CUSTODY:  APPELLANT'S RANDOM DRUG TEST

Mr. Woods argues that the Commission should have excluded the drug test results due to an alleged failure on the part of the Commission and Aegis Labs to properly account for the chain of custody through the accompanying chain of custody forms. No objection was made before the Commission on the admissibility of the drug test. In addition, the Department presented extensive testimony concerning the chain of custody of the random drug test samples including that of Mr. Woods. This testimony given by Dr. David Lee Black included the following statements concerning the chain of custody forms submitted to the Commission:

> Q.     Does your review of this form indicate any breakdown or problem in the chain of custody?
> A.     No. This part of the process, no. This is complete. This is what Dr. Bluhm also would have reviewed.
> Q.     So when you testified earlier that at various stages the chain of custody was reviewed and found to be intact without any problem, this form verifies?
> A.     Yes. This verifies that the initial part of the chain of custody process and the collection process has been collected.
> Q.     So there was no problem with the chain of custody in this case?
> A.     That's correct.

This testimony remained unchallenged before the Commission. Under the circumstances, this Court finds that a reasonable person could come to the conclusion that the urine tested by Aegis Labs and returning a positive result for cocaine metabolites was indeed Mr. Woods' urine. The question of whether the requisite chain of possession has been sufficiently established to justify admission is addressed to the sound discretion of the trial court. *Ritter v. State*, 3 Tenn. Crim. App. 372, 462 S.W.2d 247 (1970); *Shell v. Law*, 935 S.W.2d 402, 409 (Tenn.Ct.App.1996). The Commissioner appropriately exercised his discretion.

## III.   ZERO-TOLERANCE

Mr. Woods next argues that the fire chief is without authority to adopt the zero-tolerance policy without Civil Service Commission approval. Appellant did not raise this issue in the trial

court but raises it for the first time on appeal. Generally, a party cannot raise such an issue for the first time on appeal and this Court may refuse to consider such issue. *Seay v. County of Shelby*, 672 S.W.2d 404, 409 (Tenn.Ct.App.1984); *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn.1978).

At any rate, the issue is without merit as section 8.303 of the Metropolitan Charter provides that the Fire Chief "shall make regulations, with the approval of the Metropolitan Mayor and in conformity with applicable ordinances, concerning the operation of the department, the conduct of the officers and employees thereof . . . ."

The zero-tolerance policy was adopted by the Department pursuant to Metropolitan Charter section 8.303 on July 1, 1998, revised on July 11, 1998, approved by the Fire Chief and approved by the Metropolitan Mayor. Appellant tested positive for cocaine on January 21, 1999 by means of random selection. The departmental hearing was held on February 1, 1999 and Appellant was terminated.

The proceedings conformed with the provisions of the Metropolitan Charter and the zero-tolerance policy. As there is substantial and material evidence in the record to support the action of the Administrative Law Judge and there has been no abuse of discretion, the judgment of the chancellor is in all respects affirmed.

Costs of the cause are assessed to Appellant.

_____
WILLIAM B. CAIN, JUDGE